**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **EDNA SUE EURESTI** | § | |
| | § | |
| **V.** | § | **A-15-CV-00044-AWA** |
| | § | |
| **CAROLYN W. COLVIN, ACTING** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Brief in Support of Claim, filed on August 26, 2015 (Dkt. No. 18), and Defendant's Brief in Support of the Commissioner's Decision, filed on September 11, 2015 (Dkt. No. 20).  Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

**I.  General Background**

On December 29, 2011, Plaintiff Edna Sue Euresti ("Euresti")[1] filed applications for both disability insurance benefits and supplemental security income alleging she became unable to work on July 30, 2010, due to diabetes, peripheral neuropathy, fibromyalgia, high blood pressure, cholesterol problems, vision problems, depression and anxiety.  After the Agency denied her application initially and again on reconsideration, Euresti requested an administrative hearing. Euresti and her attorney, Natalie Karam, and the vocational expert, Mary May, attended the administrative hearing before Administrative Law Judge ("ALJ") Barbara C. Marquardt on March 20, 2013.  On July 16, 2013, the ALJ issued a decision finding that Euresti was not disabled under the Act.  The Appeals Council denied Euresti's request for review on October 27, 2014.

Euresti has exhausted her administrative remedies and now seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).

_____

[1]Euresti was 54 years-old at the time of the ALJ's decision.

## II. Standard of Review

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1.   a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2.   a claimant will not be found to be disabled unless he has a "severe impairment";

3.   a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4.   a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5.   if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner. *Greenspan*, 38 F.3d at 236. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III. Analysis

The ALJ employed the regulations' five-step sequential evaluation process to determine whether Euresti was disabled. 20 C.F.R. § 404.1520(a). *See* Tr. 10-23. At the first step, the ALJ determined that Euresti had not engaged in substantial gainful activity since July 30, 2010. At the second step, the ALJ found that Euresti suffers from severe impairments of obesity, diabetes

3

mellitus, fibromyalgia, diabetic neuropathy, history of right rotator cuff tear with subsequent surgical repair, degenerative disc disease of the cervical spine, and depression. At step three, the ALJ found that, considered separately and in combination, Euresti's impairments did not meet or medically equal the severity criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and thus her impairments were not presumptively disabling. At step four, the ALJ determined that Euresti had the residual functional capacity to perform her past relevant work as a data entry clerk. Accordingly, the ALJ found that Euresti was not disabled as defined in the Social Security Act.

Euresti argues that the ALJ's finding she has the residual functional capacity to perform her past relevant work is not supported by substantial evidence because the ALJ "failed to properly accommodate Plaintiff's acknowledged severe mental limitations." Dkt. No. 18 at p. 4. The Court disagrees.

Before making a determination about a claimant's disability status, an ALJ must determine the individual's residual functional capacity ("RFC"). RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Irby v. Barnhart*, 180 F. App'x 491, 493 (5th Cir. 2006) (quoting S.S.R. 96–8p). In making this determination, the ALJ must consider all the record evidence and determine plaintiff's abilities despite her physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96–8p. The relative weight to be given to the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n. 1 (5th Cir. 2001) (citing *Johnson v.*

4

*Bowen*, 864 F.2d 340, 347 (5th Cir. 1988).  The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).

 After considering all of the medical evidence in the record, the testimony of the vocational expert, and the testimony of the Plaintiff, the ALJ determined that Euresti had the RFC to:

> perform sedentary work, except the claimant cannot climb ladders, ropes, or scaffolds. The claimant should not work around unprotected heights or moving hazardous machinery. The claimant can only occasionally reach above her right shoulder. The claimant is mentally limited to detailed, not complex, tasks. The claimant should be limited to work dealing with things, rather than people. The claimant should not have work that requires interacting with crowds or the public; however, the claimant would be able to have frequent contact with co-workers.[2]

Tr. at 15.  Based upon these findings , the vocational expert's testimony and the medical records before her, the ALJ opined that Euresti had the RFC to perform her past relevant work as a data entry clerk.

 Applying the deferential standard it must, the Court finds that substantial evidence in the record supports the ALJ's finding that Euresti's mental impairments are not disabling.  Although the ALJ acknowledged that Euresti had a history of anxiety and depression, he concluded that the evidence did not support a finding that her mental impairments were disabling.  First, the ALJ noted that Euresti's depression and anxiety was situational and stemmed from her marriage and financial

---

  [2]Euresti argues that the ALJ's finding that she could have frequent contact with co-workers conflicts with her finding that Euresti "should be limited to work dealing with things, rather than people."  Based on the record and the hearing testimony, the ALJ obviously meant that Euresti should be limited to work not involving crowds and the public, not that she should avoid all people, and particularly co-workers.  Regardless, however, Euresti fails to show how she was prejudiced by this alleged conflict in the RFC.  "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362,  1364 (5th Cir.1988).

problems, rather than an acute disabling mental illness.  Situational depression that is not due to a mental impairment is insufficient to establish a disability. *See Mayes v. Astrue*, 2008 WL 5069750, *3 (5th Cir. 2008) (depression as consequence of anxiety regarding joblessness and health, indicating condition is likely situational and not psychological); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (reports of emotional distress and depression due to inability to work are insufficient to meet the burden of proving non-exertional mental impairment); *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("Mere sensitivity about loss of ability to perform certain chores, however, does not even approach the level of a mental or emotional impairment as defined by SSA regulations."); *McGehee v. Chater*, 1996 WL 197435 at *2 (5th Cir.1996) (examples of situational depression are poor health, financial problems and marital discord).  Numerous medical records in this case support the ALJ's finding that Euresti's depression was situational and primarily due to her unhappy marriage.  *See e.g.*, Tr. 344 ("Reports lots of stress at home due to husband refusing to work, sleeping all day and staying up all night."; Tr. 326 ("Pt. is not happy in her marriage and feels that her husband always puts her second..."); Tr. 336 (reporting to therapist that she did not want to attend Thanksgiving with husband's family); Tr. 339 ("Discussed husband's hoarding in more detail..."); Tr. 510 (noting that husband was "the root of her distress").  On March 6, 2012, Euresti's primary treating physician diagnosed her with moderate major depression and was directed to work on improved eating habits, stop "babying" her husband, and continue with her antidepressants and therapy. Tr. 511.

The ALJ also found that "the intensity, persistence and limiting effects" of her mental impairments were not entirely credible based upon the medical evidence.  Tr. at 19.  "At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged."  *Anthony v. Sullivan*, 954 F.2d

289, 296 (5th Cir. 1992). The ALJ noted that despite Euresti's subjective complaints of disabling depression, the medical records failed to support her allegations. The ALJ noted that the medical records revealed that Euresti repeatedly denied that she was depressed. On December 1, 2010, Euresti told her doctor that she was "not convinced that she has anxiety or depression." Tr. 264. Similarly, in October 2011, she told her therapist that she was not depressed and that "I could have joy if I didn't have bills." Tr. 342. The ALJ further noted that despite her subjective complaints, her examinations often showed her with normal or mild moods and that she demonstrated coherent, logical and goal-directed thought processes. See Tr. 321, 328. For example, on December 12, 2011, her treating physician noted that she had average intelligence and that her thoughts were coherent, logical, and goal-directed and she exhibited no looseness of associations or flights of ideas. Tr. 328. In addition, Euresti did not display any suicidal or homicidal ideations. See Tr. 326, 328, 339. While Euresti was diagnosed with a GAF[3] in the low fifties, her physicians also found that she only had moderate problems with regard accessing health care, finances, housing, occupation, primary support group, and social environment. Tr. 326, 340, 511.

The ALJ also noted that Euresti repeatedly told her physicians of her desire to be diagnosed as disabled in order for her to receive Social Security benefits. See Tr. 264 (noting that she denied

---

[3]GAF stands for Global Assessment of Functioning and is a rating on a scale of 1 to 100 reflecting a clinician's judgment of an individual's overall level of psychological, social, and occupational, but not physical, functioning. a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 701 n. 2 (5th Cir. 2001) (quoting AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 2000)(DSM-IV)). It Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed.2000) (DSM-IV-TR). A GAF score of 41-50 indicates serious symptoms; a score of 51-60 indicates moderate symptoms. Id. at 34.

she has anxiety or depression but noted that "[s]he is wondering if she can go on disability also because of the pain."); Tr. 322 (gave physician form for disability); Tr. 951 (noting that Euresti was upset that primary care giver said that she was able to work part time). Notably, the medical records show that Euresti did not complain to her treating physicians regarding her alleged depression until around the time she applied for disability. Before that time, her complaints were based on her alleged physical ailments. See Tr. 396 ("No unusual anxiety or evidence of depression."). The vast majority of medical records in the Transcript in this case are related to Euresti's physical impairments, not her alleged mental impairment.

The medical records also reveal that Euresti repeatedly failed to follow her treating physician's advice with regard to taking medication and attending therapy. The medical records show that when Euresti took her prescribed medication, her depression improved. For example, in October 2011, she admitted that Lexapro was helpful with her moods. Tr. 342. In January 2012, Euresti admitted to her treating physician that Abilify had been helping with her irritability but also admitted that she had not been to a therapist for several months. Tr. 321. Notably, she returned to therapy a week after applying for disability. Tr. 325. In February 2012, Euresti's physician noted that Euresti was "being resistant today" and was choosing not to be actively engaged in her therapy. Tr. 519. Euresti' decision to forgo prescribed medical treatment reflects upon her credibility with regard to the seriousness of her impairments. *See Johnson v. Sullivan*, 894 F.2d 683, 685 N. 4 (5th Cir. 1990) (plaintiff would not be found disabled where he failed to follow the treatment regimen prescribed by his physicians); *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980) (conditions controlled or controllable by treatment are not disabling).

In light of the above-evidence, the ALJ did not rely on the consulting psychologist's assessment which placed greater restrictions on Euresti's ability to work than the ALJ acknowledged. See Tr. 22.  The relative weight to be given to the evidence is within the ALJ's discretion and the ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. See *Chambliss*, 269 F.3d at 523  n. 1; *Morris*, 864 F.2d at 336.

Based upon the foregoing, the Court finds that substantial evidence in the record supports the ALJ's finding in this case.  It is important to remember that the task of weighing the evidence is the province of the ALJ, whereas the task of the Court is merely to determine if there is substantial evidence in the record as a whole to support the ALJ's decision. *Chambliss*, 269 F.3d at 523. Because substantial evidence in the record supports the ALJ's RFC determination in this case, the Commissioner's decision must be affirmed.

## IV.  Conclusion

In summary, the Court finds that the ALJ applied the proper legal standards in this case and that her findings are supported by substantial evidence in the record. Accordingly, the decision of the Commissioner of the Social Security Administration finding that Edna Sue Euresti is not disabled is **HEREBY AFFIRMED**.

SIGNED this 15th day of July, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE